2004-NMCA-070

93 P.3d 10

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Linda CELUSNIAK, Defendant–
Appellant.**

**No. 23973.**

Court of Appeals of New Mexico.

April 15, 2004.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, for Appellee.

Adam D. Rafkin, Adam D. Rafkin, P.C., Ruidoso, for Appellant.

## OPINION

PICKARD, J.

{1} Defendant entered a conditional plea in magistrate court, reserving the right to appeal her motion to suppress. This case is before us on appeal following the district court's decision to deny the motion. The procedural posture of the case gives us the opportunity to clarify the approach for litigating reserved issues when a conditional plea is entered in the magistrate court. The merits of Defendant's challenge of the district court's denial of her motion to suppress give us the opportunity to explore issues of abandonment and consent when a passenger leaves a purse in a car that is searched upon the driver's consent. We reverse.

## FACTS AND PROCEDURAL HISTORY

{2} The female Defendant was a passenger in a car that contained two male passengers and a female driver. A state police officer pulled the car over when he observed that the driver was not wearing a seat belt. While speaking to the driver, the officer noticed the strong odor of burnt marijuana. He asked the driver to exit the vehicle and inquired about the odor that he had noticed. The driver did not admit to marijuana use, and she told the officer something to the effect of, "If there is marijuana in the vehicle, please do find it."

{3} The officer began his search of the vehicle in the driver's area. He asked the two male passengers to exit the vehicle while he proceeded clockwise to search the front passenger area and the rear passenger area behind it, where the males were sitting. Finding nothing, he asked Defendant to exit the vehicle while he searched the driver's side rear seat area where Defendant had been seated. In front of where Defendant was sitting, he found a woman's purse "crammed" underneath the driver's seat. He opened the purse and immediately noticed a bag of marijuana. The officer exited the vehicle and asked Defendant if this was her purse. Defendant stated that it was hers. The officer arrested Defendant and released the others with a citation to the driver for the seat belt violation.

{4} Defendant was charged with one petty misdemeanor count of possession of marijuana (one ounce or less), contrary to NMSA 1978, § 30–31–23(B)(1) (1990). With the case proceeding in magistrate court, Defendant filed a motion to suppress the marijuana, which was denied. Defendant entered a plea of no contest. Defendant and the State agree that the plea was conditioned on an appeal of the motion to suppress, although the judgment and sentence issued by the magistrate court does not indicate the condi-

tion in writing. Defendant filed a notice of appeal with the district court. The district court heard the motion de novo and denied it.

{5} Defendant appealed the district court's denial of the motion to suppress to this Court. In our first calendar notice, we proposed to hold that "the district court should have disposed of the appeal by entry of an order dismissing the appeal and remanding the cause to the magistrate court for enforcement of its judgment and sentence." Defendant prepared such an order and submitted it to the district court. However, the district court refused to sign the order, apparently interpreting our calendar notice as requiring Defendant to dismiss her appeal in this Court before proceeding to straighten out the procedural issues below. Defendant submitted a motion to dismiss to this Court, and we clarified that Defendant was not required to move for dismissal of her appeal to this Court. Instead, we ordered Defendant to "obtain an order from the district court dismissing and remanding to the magistrate court to enforce its judgment and file it with this Court within twenty (20) days." The district court again refused to issue an order dismissing the appeal, stating that its decision on the motion to suppress was not dispositive of the case. On the district court's suggestion, Defendant entered a new conditional plea of no contest in the district court, reserving the right to appeal the denial of the motion to suppress to this Court. The district court also entered a judgment and sentence on the plea which was the same as that entered by the magistrate court. We accepted these documents as the basis of this appeal and assigned the case to the general calendar, asking the parties to brief the procedural issue in the case.

**ISSUE ONE: Proper procedure for obtaining a final, appealable order from a magistrate court appeal**

{6} In the present case, the magistrate court had original jurisdiction because Defendant was charged with a petty misdemeanor. NMSA 1978, § 35-3-4(A)(1985) (conferring magistrate jurisdiction). Defendant moved for suppression of evidence of the marijuana, arguing that it was obtained through an ille-gal search. *See* Rule 6-304(C)(1) NMRA 2004 (permitting persons aggrieved by a search and seizure to move for suppression in the magistrate court). When that motion was denied, Defendant entered a no contest plea on the condition that she could appeal the decision on the motion to suppress.

**a. Conditional pleas in magistrate court**

{7} A voluntary no contest plea ordinarily operates as a waiver of the right to appeal. *See State v. Hodge*, 118 N.M. 410, 414, 882 P.2d 1, 5 (1994). However, New Mexico recognizes the conditional plea as the "proper procedure to enable a defendant to reserve a significant pretrial issue for appeal in a case in which conviction seems certain unless the defendant prevails on the pretrial issue." *Id.* at 416, 882 P.2d at 7. A defendant enters a conditional plea by (1) preserving the error through a pretrial motion, (2) obtaining consent of the prosecution, and (3) obtaining approval of the court. *Id.* Appellate courts can recognize a conditional plea without written evidence thereof when the record reveals that the defendant has fulfilled the spirit of the rule by meeting these three requirements. *Id.* at 417, 882 P.2d at 8.

{8} While our rules have codified the conditional plea in district court and for certain offenses in metropolitan court, New Mexico does not have a rule formally codifying the conditional plea in magistrate court. *See* Rule 5-304(A)(2) NMRA 2004 (conditional plea in district court); Rule 7-502(A)(3) NMRA 2004 (conditional plea for offenses tried on the record in metropolitan court); Rule 6-502(A) NMRA 2004 (pleas in magistrate court). We do not read this as a prohibition against conditional pleas in magistrate court, especially in light of our courts' general approval of conditional pleas as an efficient use of court resources. *See Hodge*, 118 N.M. at 416, 882 P.2d at 7. It is likely that the conditional plea procedure was not written into the magistrate court rules because appeals from magistrate court, as well as appeals from cases in metropolitan court, except those involving domestic violence and driving while intoxicated, are tried de novo.

Rules 6–703(J); 7–703(J) NMRA 2004. However, we see no reason why the same benefits of efficiency and conservation of resources should not be obtainable in de novo appeals from magistrate court. Conditional pleas in magistrate court should meet the same requirements of issue preservation and reservation, prosecutorial consent, and court approval as those in district and metropolitan courts. Then, whatever issue is reserved should be heard de novo. While there may be cases, as here, in which the State and the defendant agree orally that a conditional plea has been entered, we note that a written conditional plea is preferable in magistrate court because there is no formal record of proceedings to facilitate appellate review.

### b. Procedure for appeals following conditional pleas in magistrate court

{9} Generally, when a defendant has been convicted of a crime in magistrate court, he or she has 15 days to appeal to the district court. Rule 6–703(A). The district court hears the appeal de novo. Rule 6–703(J). The district court then enters a judgment or order disposing of the appeal, which may be accompanied by a formal or memorandum opinion. Rule 6–703(O). The parties may appeal the decision of the district court to this Court at this point. Rule 6–703(Q). After the district court issues an order, if there is no motion for rehearing after 15 days, Rule 6–703(O)(2), and no appeal after 30 days, Rule 12–201(A)(2) NMRA 2004, the district court issues a mandate to the magistrate court to enforce the district court's judgment. Rule 6–703(P). If the parties appeal the district court's decision, the district court does not issue a mandate to the magistrate court until the final disposition of the appeal. Rule 6–703(O)(3). On remand, the magistrate court proceeds with the case in keeping with the mandate of the district court.

{10} The mechanics of this process easily adapt to a case involving a conditional plea. In magistrate court, the defendant may enter a conditional plea of guilty or no contest, reserving one or more issues for appeal. The magistrate court then enters a judgment and sentence that embodies the provisions of the plea agreement. Rule 6–502(D)(3) (plea agreement procedure in magistrate court). The judgment should also expressly set out the issues reserved for appeal. *See* Form 9–408C NMRA 2004 (conditional plea). The defendant has 15 days to file his or her notice of appeal to the district court. The district court hears only the matters reserved, and it hears these de novo. The district court then issues an order resolving the matters before it. For example, on a motion to suppress, if the court rules in the defendant's favor, it will enter an order granting the motion to suppress; if not, it will enter an order denying it and, as it has ruled on all the matters before it, dismissing the appeal.

{11} If the defendant prevails on a motion to suppress at the district court, the State may appeal the decision to this Court within ten days. Rule 12–201(A)(1); *see* Rule 6–703(Q) (authorizing appeals in accordance with the rules of appellate procedure). If the State does not file a timely appeal, the district court remands to the magistrate court where the defendant may withdraw the plea. *See* Rule 7–502(A)(3) (conditional plea agreement procedure in metropolitan court).

{12} If the defendant does not prevail, he or she may appeal to this Court within 30 days. Rule 12–201(A)(2). After the final disposition of the appeal, the district court remands to the magistrate court. Again, if the defendant prevails, he or she may withdraw the plea. If the State prevails, the magistrate court enforces the original judgment and sentence that embodied the disposition of the plea agreement. At this point, the judgment is like any other judgment arising from a guilty or no-contest plea, and no further appeal on the merits of the case is permitted.

{13} In the present case, the district court had trouble reconciling our mandate to dismiss the appeal with the fact that it did not have the entire case before it. The confusion may have been rooted in our past cases, which held that when the district court enters an order of remand to the magistrate court that does not cover sentencing, the order is not final and appealable. *State v. Cordova*, 114 N.M. 22, 23, 833 P.2d 1203, 1204 (Ct.App.1992).

{14} In reviewing a conditional plea from magistrate court, however, the district court does have the power to issue a final and appealable order without exceeding the bounds of its limited review. "A final judgment in a criminal case is one which either (1) adjudicates the defendant to have been convicted of a criminal offense and imposes, suspends or defers sentence or (2) dismisses all of the charges against the defendant." *State v. Garcia*, 99 N.M. 466, 471, 659 P.2d 918, 923 (Ct.App.1983). If the district court finds for the defendant, its order granting the motion to suppress is sufficient for the State to appeal under Rule 12–201(A). If the district court finds against the defendant, there are no issues remaining in the defendant's adjudication. The magistrate court has already entered the judgment and sentence to be enforced should the appeal fail. The district court can, therefore, issue a final and appealable order dismissing the appeal and recognizing the sentence that was agreed upon below.

{15} We reiterate that the district court does not remand the case back to the magistrate court until all appeals have been resolved. Thus, in the present case, it was unnecessary to enter a new conditional plea and judgment and sentence. However, because the parties and the district court were operating without the benefit of guidance from the rules, and because the entry of a new plea agreement together with judgment and sentence in the district court did amount to a final order, although unnecessarily burdensome to the parties and court, we will reach the merits of the appeal.

**ISSUE TWO: Motion to suppress**

{16} Defendant contends that the district court erred in denying her motion to suppress. In reviewing a motion to suppress, we defer to the district court's findings of fact if they are supported by substantial evidence. *State v. Shaulis–Powell*, 1999–NMCA–090, ¶ 7, 127 N.M. 667, 986 P.2d 463. We review the application of the law to the facts de novo. *Id.*

{17} Defendant does not challenge the validity of the initial traffic stop or of the driver's consent to search the vehicle. Thus, this case presents the narrow question of whether an officer who has obtained a valid consent to search a vehicle can search a purse left in that vehicle when he has not determined whether the consenting party owned the purse and when, in fact, she did not. The district court order found "that the officer's conduct was reasonable in light of the consent given by the driver, or in the alternative, Defendant abandoned her expectation of privacy in the bag when she left the vehicle." We address each basis for the order in turn, although we recognize that, logically, the abandonment rationale should be addressed first inasmuch as Defendant would have no standing to object to the search if she abandoned her expectation of privacy in the bag.

**a. Consent**

{18} The trial court ruled that the search was valid because it was within the scope of the driver's consent to the search of the vehicle. Under the circumstances of this case, we disagree.

{19} Initially, we note that the State is correct to point out that Defendant does not explicitly declare whether she challenges the search pursuant to the New Mexico or United States Constitution. However, because Defendant's arguments to the district court and to this Court accurately relied on New Mexico cases that announced both federal and state constitutional standards for searches, we will consider both the federal and New Mexico constitutional arguments. Defendant is arguing for the application of an existing New Mexico constitutional standard that exceeds federal protections, rather than the creation of a new state standard, and she adequately asserted these state protections as discussed in *State v. Gomez*, 1997–NMSC–006, ¶ 22, 122 N.M. 777, 932 P.2d 1 (explaining that a state constitutional claim is preserved by asserting the constitutional principle that provides the protection sought and showing the factual basis needed for the trial court to rule on the issue).

{20} Under the New Mexico Constitution, there is no doctrine of "apparent authority" that allows a person without actual

authority to consent to the search of personal or real property. *State v. Cline*, 1998–NMCA–154, ¶ 17, 126 N.M. 77, 966 P.2d 785. Instead, the person giving consent must have "common authority" to consent to the search. *Id.* (internal quotation marks and citation omitted). Here the State makes no attempt to argue that the driver had common authority over the purse.

{21} Instead, the State suggests that our precedents indicate a requirement that the owner of property must protest the authority of the person who consented to the search. We do not read *Cline, id.* ¶ 16, to suggest this proposition. In *Cline,* the owner of the property was the wife of the man who consented to the search. *Id.* We cited to federal cases that suggest that a wife may overcome the presumption of joint marital ownership by protesting to her husband's authority to consent to a search. *Id.* No such presumption exists in the present case, where Defendant had no familial relationship with the driver, nor did the officer in the present case claim to rely on any familial relationship as a basis for his search.

{22} Furthermore, Defendant may not have been aware that the search was being conducted pursuant to the driver's consent. The officer obtained the consent after questioning the driver while the officer and the driver were standing behind the driver's car. Their discussion, therefore, was presumably out of Defendant's earshot. Even when Defendant was asked to exit the vehicle, the officer instructed her to stand in front of the car, apart from the driver and other passengers who were standing behind the car. Thus, Defendant would not have had the opportunity to learn about the consent from the driver or the other passengers. The State did not introduce evidence that Defendant was aware that the search was pursuant to the driver's consent, leaving open the question of whether Defendant was aware that there was any objection to be made. For these same reasons, we are unpersuaded by cases holding that a search is permissible when an individual is silent while a third party gives consent to search an area that contains that individual's belongings. *See, e.g., State v. Frizzel*, 132 Idaho 522, 975 P.2d 1187, 1190 (Idaho Ct.App.1999). Defendant did not sit silently while the driver gave consent because she was not present when the driver gave consent.

{23} In addition, the cases from other jurisdictions on the issue of consent under circumstances such as those in this case give us pause in relying on the district court's consent rationale. *See State v. Matejka*, 241 Wis.2d 52, 621 N.W.2d 891, 894–95 n. 3 (2001) (collecting cases on the subject of consent of driver to search of car as encompassing passenger's belongings and appearing to draw distinctions based on awareness of passenger that driver consented and knowledge of police regarding to whom the property belonged). Although these cases concern the doctrine of apparent authority, which New Mexico rejects, we believe that they contain language that is useful in guiding our decision in this case. When, as here, the circumstances surrounding ownership of an item are unclear, it is advisable for officers to err on the side of caution. *See* 3 Wayne R. LaFave, *Search and Seizure* § 8.3(g), at 747 (3d ed.1996) (discussing that "the police must be required to make reasonable inquiries" when there are "ambiguous circumstances" surrounding whether an individual consenting to a search of a place has the authority to consent to the search of a particular item found in that place). For example, a Florida case, in which an officer searched a fanny pack that a passenger took from her lap and placed on the floorboard when ordered out of the car, relied on LaFave in requiring the police to inquire into the ownership of the pack before assuming that it was within the scope of the driver's consent to search the vehicle. *See Brown v. State*, 789 So.2d 1021, 1024 (Fla.Dist.Ct.App.2001). Finally, courts have explained that because "a purse is a type of container in which a person possesses the highest expectations of privacy," officers should be "required, at a minimum, to inquire further before assuming that [the driver's] consent was sufficient to authorize them to open the purse they discovered during their search of the automobile." *United States v. Welch*, 4 F.3d 761, 764–65 (9th Cir.1993).

{24} In sum, the State has not demonstrated that the driver had common authority over the purse so as to bring the search of the purse within the scope of the driver's consent, and we do not see any reason to create a new exception to the common authority doctrine, such as the State argues should be the rule when an owner is present and does not protest. We hold that the search of Defendant's purse was beyond the scope of the driver's consent, and because Defendant was not present when the driver consented to the vehicle search, Defendant was not required to assert her ownership of the purse or her objection to the search.

### b. Abandonment

{25} In order for Defendant to contest the search, she must have standing, or a legitimate expectation of privacy in the purse. *State v. Esguerra*, 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App.1991). "The question of legitimate expectation of privacy involves two inquiries: (1) has the individual by his conduct exhibited an actual (subjective) expectation of privacy; and (2) is this individual's subjective expectation one that society is prepared to recognize as reasonable." *Id.* (internal quotation marks and citation omitted). While ownership or lawful possession generally gives rise to a legitimate expectation of privacy, *id.*, one can relinquish this expectation if he or she abandons the property. *State v. Clark*, 105 N.M. 10, 12–13, 727 P.2d 949, 951–52 (Ct.App.1986).

{26} "Abandonment is an ultimate fact or conclusion based upon a combination of acts and intent." *Id.* at 13, 727 P.2d at 952. Intent can be inferred from words, actions, and other facts. *State v. Guebara*, 119 N.M. 662, 665, 894 P.2d 1018, 1021 (Ct.App.1995). The party seeking to prove abandonment must show this intent by "clear, unequivocal and decisive evidence." *Clark*, 105 N.M. at 13, 727 P.2d at 952.

{27} Based on these cases, one could conclude that the inquiry is basically a factual one on which we should defer to the trial court's "finding" of abandonment. However, while we are committed to the rule requiring deference to factual findings, the "finding" here was in reality a mixed question of fact and law. *See State v. Attaway*, 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994). The trial court found that "Defendant had abandoned her expectation of privacy in the bag when she left the vehicle." This was supported by the factual findings that Defendant "crammed" the purse under the seat with the intent to hide it in response to the impending search that she saw was coming. However, these factual findings do not answer the legal question of whether Defendant's actions and intent amount to an abandonment. *See State v. Jason L.*, 2000-NMSC–018, ¶ 19, 129 N.M. 119, 2 P.3d 856 (relying on *Attaway* and explaining that historical factual inquiries are reviewed deferentially for substantial evidence while the possible inferential conclusions from those facts are reviewed de novo as legal inquiries so that there can be meaningful review of constitutional issues involving police behavior). We therefore review the conclusions from the facts of this case de novo. *Id.*

{28} Canvassing cases from other jurisdictions, we find that the basic inquiry is whether the defendant either denied ownership of the item or physically relinquished it. *See, e.g., United States v. James*, 353 F.3d 606, 616 (8th Cir.2003). Following from this inquiry, a review of cases from across the nation reveals several general factual scenarios that give rise to a finding of abandonment, including cases where the defendant disclaims ownership of the property, throws the property out a window or from a moving vehicle, unsuccessfully attempts to destroy the property, or leaves the property behind in a vacated premises or vehicle. *See* John P. Ludington, Annotation, *Search and Seizure: What Constitutes Abandonment of Personal Property Within Rule that Search and Seizure of Abandoned Property Is Not Unreasonable—Modern Cases*, 40 A.L.R.4th 381, 388–92, 1985 WL 287415 (1985).

{29} In the present case, there was no disclaimer of ownership. The officer did not see the purse until Defendant had exited the vehicle, and as soon as he asked her whether the purse was hers, she stated that it was. Thus, the question is whether Defendant's conduct indicates a physical relinquishment. We hold that the facts of this case, even in

the light most favorable to support the trial court's ruling, depart from our existing abandonment holdings and are too equivocal to support a ruling of abandonment.

{30} In *Esguerra*, 113 N.M. at 312–14, 825 P.2d at 245–47, we affirmed the lower court's decision that the defendant had abandoned his backpack when he left it in a public parking lot while fleeing a hotel room as police searched for him. We cited other abandonment cases that also involved dropping or throwing a package from a hotel or car window, explaining that "[i]t is not a search to observe that which occurs openly in a public place and which is fully disclosed to visual observation." *Id.* at 314–15, 825 P.2d at 247–48 (internal quotation marks and citation omitted). In *Clark*, 105 N.M. at 13–14, 727 P.2d at 952–53, we held that there was enough evidence for the prosecution to meet the "heavy burden" of proving abandonment when the incarcerated defendant appeared to have made arrangements to have his landlady remove his possessions from the residence from which he was being evicted and the landlady gave consent to search the residence.

{31} In contrast, we reversed the trial court's conclusion that the defendant had abandoned his vehicle in *Guebara*, 119 N.M. at 665, 894 P.2d at 1021. We held that the only factor weighing in favor of abandonment was the time lapse between the defendant's last possession of the vehicle and the search and that this alone was insufficient. *Id.* We also noted that other factors, including the fact that the defendant had parked the vehicle on the property with the consent of the property owners, weighed against an abandonment finding. *Id.*

{32} The only fact supporting the abandonment ruling in this case is that Defendant's purse was crammed underneath the driver's seat. Defendant did not toss the purse out the window, leave it in a public place, or otherwise discard it. This is critical, for as LaFave points out, "even an inadvertent leaving of effects in a public place, whether or not abandonment in the true sense of that word, can amount to a loss of any justified expectation of privacy." 1 Wayne R. LaFave, *Search and Seizure*

§ 2.6(b), at 575–76 (3d ed.1996); *see also State v. Parker*, 399 So.2d 24, 30 (Fla.Dist.Ct. App.1981) (stating that to find abandonment, the property "must be discarded in a place where the person has no reasonable expectation of privacy such as an open field, or public street."); *City of St. Paul v. Vaughn*, 306 Minn. 337, 237 N.W.2d 365, 371 (1975) (explaining and citing to cases that use the public place component of abandonment doctrine).

{33} Furthermore, Defendant was not fleeing police when she left the purse in the car, but rather she was following the officer's request to exit the vehicle. She did not put the purse in a place to which she had no plans to return. *See James*, 353 F.3d at 616 (explaining that abandonment in some circumstances requires leaving the property "in a manner manifesting an intent never to reclaim [it].").

{34} We also note that the officer did not ask Defendant or the driver whether the purse belonged to either female prior to searching it. By not asking anyone about the ownership of the purse prior to the search, the officer did not afford Defendant the opportunity to disclaim the purse or otherwise indicate abandonment. As we discussed in more detail above in the section on consent, we believe that in cases where the issue of ownership of an item to be searched is in question and the police can easily verify ownership without risk to their safety or the integrity of the search, police officers should be required to inquire into ownership before assuming abandonment. In addition, when Defendant claimed ownership of the purse, it did not appear that she knew that the officer had already searched the purse, as she was in front of the car and he was seated in the back seat. This indicates that while Defendant's hope may have been that the officer would not find the purse at all, she did not intend to abandon it even when she knew the officer had discovered it.

{35} We recognize that this issue is not entirely free from doubt. *Compare State v. Westover*, 140 N.H. 375, 666 A.2d 1344, 1348–49 (1995) (majority opinion upholding that the defendant did not permanently abandon his sweatshirt when he gently tossed it on

the ground before entering the convenience store and reversing the trial court's determination that the sweatshirt was "temporarily abandoned"), *with id.* at 1350–52 (Thayer, J., dissenting) (suggesting that the court should have found an intent to abandon the sweatshirt because it appeared that the defendant was attempting to dissociate himself from the sweatshirt to avoid police detection of the drugs in it). However, we believe that, under the circumstances of this case, a conclusion of abandonment would impermissibly expand the doctrine beyond the scope of our existing cases and would be inconsistent with commonly held notions about expectations of privacy. We hold, therefore, that the district court erred in finding that Defendant abandoned her purse. Accordingly, Defendant has standing to challenge the search. Because we have held that there was no consent, the motion to suppress should have been granted.

**CONCLUSION**

{36} We hold that a conditional plea reserving the right to appeal a limited number of properly raised issues is permissible in magistrate court. We also hold that the preferred procedure for appeal to this Court after such a plea is entered is for the district court to issue a final and appealable order dismissing the appeal or to issue an order granting the motion to suppress. We reverse the district court's denial of Defendant's motion to suppress. We remand to the district court so that it may issue an order of remand to the magistrate court allowing Defendant to withdraw her conditional plea.

{37} **IT IS SO ORDERED.**

CASTILLO and ROBINSON, JJ., concur.