# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **April 10, 2017**

**NOS. 33,312 and 33,701 (consolidated)**

**STATE OF NEW MEXICO,**

  Plaintiff-Appellant,

v.

**BRADFORD JAMES,**

  Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY**
**Robert A. Aragon, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Steven H. Johnston, Assistant Attorney General
Albuquerque, NM

for Appellant

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

Law Office of Brad D. Hall
Levi A. Monagle
Albuquerque, NM

for Appellee

**OPINION**

**VIGIL, Judge.**

{1}     This is a driving while under the influence of intoxicating liquor (DWI) case that originated in the magistrate court and was then appealed to the district court. The district court ruled that there was no reasonable suspicion to stop the vehicle Defendant was driving, and granted Defendant's motion to suppress. The district court also denied Defendant's motion to dismiss based on a claim that the case was not adjudicated within the time limits of Rule 6-506(B) NMRA, commonly referred to as the "six-month rule." We reverse the district court order granting Defendant's motion to suppress and affirm the district court order denying Defendant's motion to dismiss.

**I.     BACKGROUND**

{2}     A criminal complaint filed in the magistrate court charged Defendant with aggravated DWI (third offense), driving under a suspended or revoked driver's license, failure to carry evidence of financial responsibility, and failure to maintain lane. Defendant filed a motion to suppress and a motion to dismiss, alleging the case was not heard within the time required by Rule 6-506(B). The motions were denied, and Defendant entered into a conditional plea and disposition agreement in which Defendant agreed to plead guilty to non-aggravated DWI (second offense), with all

remaining charges dismissed on the condition that if he succeeded in his appeal on either motion, he could withdraw his guilty plea. The magistrate judge approved the plea and disposition agreement, and filed its judgment and sentence. *See State v. Celusniak*, 2004-NMCA-070, ¶¶ 7-8, 135 N.M. 728, 93 P.3d 10 (describing the procedure to follow for a conditional guilty plea in the magistrate court). Defendant then appealed to the district court.

{3} The appeal to the district court was de novo. Rule 5-826(J) NMRA ("Trials upon appeals from the magistrate or municipal court to the district court shall be de novo."). This means that in the district court there was "[a] new trial on the entire case—that is, on both questions of fact and issues of law—conducted as if there had been no trial in the first instance." *Black's Law Dictionary* 1737 (10th ed. 2014). In other words, the district court was not bound in any way by the magistrate court rulings, and the district court was required to make its own decision on the motion to suppress and make its own determination of whether the magistrate court complied with Rule 6-506. *See State v. Sharp*, 2012-NMCA-042, ¶ 5, 276 P.3d 969 (stating that in a de novo appeal, the district court must determine itself, independently of the magistrate court decision, "whether the magistrate court rules were followed"); *State v. Hicks*, 1986-NMCA-129, ¶ 6, 105 N.M. 286, 731 P.2d 982 ("In de novo proceedings, the district court is not in any way bound by the proceedings in the

lower court."). Defendant again filed a motion to suppress and a motion to dismiss for a violation of Rule 6-506. Following an evidentiary hearing the district court entered its order granting Defendant's motion to suppress. The State appeals from this order. The district court also denied Defendant's motion to dismiss for a violation of Rule 6-506, and Defendant appeals from this order, but only if the State succeeds in its appeal. We address each appeal in turn.

## II.    Motion to Suppress

{4}    Defendant's motion to suppress asserted that Deputy Merlin Benally of the McKinley County Sheriff's Department stopped Defendant without reasonable suspicion, and the stop therefore violated the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See State v. Candelaria*, 2011-NMCA-001, ¶ 10, 149 N.M. 125, 245 P.3d 69 ("In order to validly stop an automobile, police officers must possess, at a minimum, reasonable suspicion that a law has been violated."). Defendant also contended that the stop by Deputy Benally was a pretext stop and therefore unconstitutional under Article II, Section 10 of the New Mexico Constitution. *See State v. Ochoa*, 2009-NMCA-002, ¶¶ 1, 38, 146 N.M. 32, 206 P.3d 143 (holding that "pretextual traffic stops are not constitutionally reasonable" under the New Mexico Constitution).

## A.   Facts

{5}   Deputy Benally was parked on the median of the highway to observe traffic and to make himself visible to slow down traffic to a safe speed. While so engaged, Deputy Benally saw Defendant driving, and because of prior encounters with Defendant, believed that Defendant's driver's license was suspended.

{6}   Approximately three to four months earlier, Deputy Benally had conducted a traffic stop in which Defendant was the designated driver for the passengers who were intoxicated. Deputy Benally was informed by dispatch that Defendant's driver's license was suspended with an arrest clause, but because of the intoxicated conditions of the passengers, Deputy Benally gave Defendant a warning and told him to fix his driver's license problem. Later, around the same time period, Deputy Benally stopped a different vehicle in which Defendant was a passenger. Deputy Benally ran Defendant's information through dispatch and learned that Defendant's driver's license was still suspended. In addition, and more recently, three to four weeks before the stop at issue, Deputy Benally was on duty and heard dispatch report that Defendant's driver's license was suspended when another deputy had arrested Defendant for DWI and driving with a suspended or revoked driver's license.

{7}   Deputy Benally therefore turned his vehicle around and began to follow Defendant with the intent to stop Defendant based solely on his belief that Defendant

4

had a suspended driver's license. *See* NMSA 1978, § 66-5-39(A) (1993, amended 2013) ("Any person who drives a motor vehicle on any public highway of this state at a time when [the person's] privilege to do so is suspended or revoked and who knows or should have known that his license was suspended or revoked is guilty of a misdemeanor[.]"). Because the road had "no shoulder" where he could safely stop Defendant, Deputy Benally waited until they reached a safe place to make the stop. As Deputy Benally followed Defendant, he believed that he saw Defendant drive over one of his lanes—a solid white line—and at a stop sign, also believed that he saw that the passenger in Defendant's vehicle did not have her seatbelt on. After Defendant turned onto a street where the stop could be safely made, Deputy Benally turned on his lights and stopped Defendant.

{8}     After the stop, Deputy Benally confirmed that Defendant's driver's license was suspended. Deputy Benally also noted that Defendant had bloodshot, watery eyes, slurred speech, and an odor of alcohol on his person, and Defendant acknowledged that he had been drinking. Deputy Benally then conducted field sobriety tests, which Defendant failed. Defendant was then arrested, and Deputy Benally filed the criminal complaint in the magistrate court.

{9}     The district court found that Deputy Benally saw Defendant driving, and based on the prior encounters with Defendant, believed that his driver's license was

5

revoked. The district court further found that Deputy Benally decided to stop Defendant based only on his suspicion, and without calling on his radio to confirm that Defendant's driver's license was in fact revoked. The district court concluded that Deputy Benally's suspicion was insufficient to support a finding of reasonable suspicion for the stop. The district court further concluded that the seat belt and failure to maintain lane violations were pretext for the stop because Deputy Benally had already decided to stop Defendant before he observed those violations. The State appeals.

**B. Standard of Review**

{10} Our review of a district court's ruling on a motion to suppress involves mixed questions of fact and law. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. "[W]e look for substantial evidence to support the [district] court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Yazzie*, 2016-NMSC-026, ¶ 15, 376 P.3d 858 (internal quotation marks and citation omitted). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id*. (internal quotation marks and citation omitted); *see State v. Hicks*, 2013-NMCA-056, ¶ 5, 300 P.3d 1183 (stating that whether an officer has

6

a reasonable suspicion to stop the defendant's vehicle presents a legal question, which is reviewed on appeal de novo).

**C.    Analysis**

{11}    We have not heretofore analyzed reasonable suspicion any differently under Article II, Section 10 of the New Mexico Constitution than under the Fourth Amendment to the United States Constitution. *Yazzie*, 2016-NMSC-026, ¶ 38. Moreover, Defendant does not argue on appeal that in evaluating the constitutional reasonableness of the stop, our New Mexico Constitution affords greater protection than the United States Constitution. We therefore assume that both constitutions afford the same level of protection. *Id*. ¶ 39 (applying the same reasonable suspicion analysis to the stop under Article II, Section 10 of the New Mexico Constitution as was applied under the Fourth Amendment); *see State v. Hubble*, 2009-NMSC-014, ¶ 6, 146 N.M. 70, 206 P.3d 579 (stating that because there was no claim that the New Mexico Constitution affords greater protection than the United States Constitution, the issue of reasonable suspicion would be evaluated under federal Fourth Amendment law); *State v. Funderburg*, 2008-NMSC-026, ¶ 12, 144 N.M. 37, 183 P.3d 922 (stating that when no claim is made that the New Mexico Constitution affords greater protection than the United States Constitution, "we assume without

deciding" that the protection under both constitutions is identical (internal quotation marks and citation omitted)).

{12} "Both the United States Constitution and the New Mexico Constitution protect a citizen against unreasonable searches and seizures." *Funderburg*, 2008-NMSC-026, ¶ 12. An officer has committed a "seizure" when he stops an automobile and detains the occupants for an investigatory detention. *Id.* ¶ 13. An officer "must have a reasonable suspicion of illegal activity" before the officer makes a traffic stop to investigate that illegal activity. *Hubble*, 2009-NMSC-014, ¶ 7 (internal quotation marks and citation omitted). "A reasonable suspicion is a particularized suspicion, based on all the circumstances that a particular individual, the one detained, is breaking, or has broken, the law." *State v. Jason L.*, 2000-NMSC-018, ¶ 20, 129 N.M. 119, 2 P.3d 856. A reasonable suspicion arises "if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Hubble*, 2009-NMSC-014, ¶ 8 (internal quotation marks and citation omitted).

{13} The question presented is one of first impression in New Mexico: whether it was reasonable for Deputy Benally to have a suspicion that Defendant was driving with a revoked or suspended driver's license based upon his two prior encounters

8

with Defendant, and having heard on the police radio three or four weeks earlier that Defendant was arrested for driving with a suspended or revoked driver's license and DWI. We conclude that Deputy Benally's stop of Defendant was supported by a constitutionally sufficient reasonable suspicion.

{14}	Other jurisdictions have considered whether reasonable suspicion supports a traffic stop when it is based on an officer's knowledge that the driver's license of the driver was suspended or revoked and have concluded that such knowledge supports a finding of constitutionally adequate reasonable suspicion to make a stop for that offense. *See United States v. Sandridge*, 385 F.3d 1032, 1034-36 (6th Cir. 2004) (holding that the officer had reasonable suspicion to stop the defendant for an invalid driver's license when the officer learned, approximately over three weeks before, that the defendant did not have a valid driver's license and nothing in the record suggested that the officer should have assumed the on-going violation had ceased); *State v. Leyva*, 599 So. 2d 691, 693 (Fla. Dist. Ct. App. 1992) (holding that the officer had, at a minimum, reasonable suspicion that the defendant was driving with a suspended license when the officer had "four-to-five-week-old" information that the defendant's driver's license was suspended); *State v. Harris*, 513 S.E.2d 1, 3 (Ga. Ct. App. 1999) (holding that the officer had reasonable suspicion to stop the defendant when the arresting officer was informed from other officers that, in "the last few weeks" prior

to the stop, the defendant's driver's license was suspended (internal quotation marks omitted)); *State v. Duesterhoeft*, 311 N.W.2d 866, 866-68 (Minn. 1981) (holding that when the officer had learned a month earlier that the defendant owned the vehicle and had a suspended driver's license, the officer had reasonable suspicion to stop the defendant); *State v. Decoteau*, 2004 ND 139, ¶ 13, 681 N.W.2d 803 ("When an officer observes a person driving a vehicle, and the driver's license was suspended when the officer stopped him one week earlier, it is far from a 'mere hunch' to suspect the driver's license is still under suspension.").

{15}    New Mexico precedent favors following the reasoning of the foregoing cases. In *Candelaria*, 2011-NMCA-001, ¶¶ 1, 9, 16, 19, we concluded that reasonable suspicion for a stop was satisfied under the United States Constitution when police officers ran the license plate of a vehicle and learned that the driver's license of the registered owner of the vehicle was suspended. We then followed *Candelaria* in holding that the New Mexico Constitution was not violated where a stop was based on information obtained from the Motor Vehicle Department (MVD) that the owner's driver's license was revoked. *Hicks*, 2013-NMCA-056, ¶¶ 1, 2, 4. More recently, our Supreme Court held in *Yazzie* that an officer had a reasonable suspicion to conduct a traffic stop for operating an uninsured vehicle in violation of the law when he relied on records of the MVD reporting that it was unknown if the vehicle he stopped was

10

insured as required by the Mandatory Financial Responsibility Act. 2016-NMSC-026, ¶¶ 6, 30, 36.

{16} One of the cases we cited in support of our conclusion in *Candelaria* was *State v. Halvorson*, 2000 MT 56, ¶ 15-16, 299 Mont. 1, 997 P.2d 751. *Candelaria*, 2011-NMCA-001, ¶ 13. In *Halvorson*, a city police officer arrested a female driver for DWI who was driving a vehicle with a personalized license plate, and because the driver refused to take a breathalizer test, her driver's license was revoked for six months. *Halvorson*, 2000 MT 56, ¶ 3. The city police officer was married to a county deputy sheriff, who followed the arrest on his radio, and later discussed the circumstances of the arrest and license suspension with his wife, the city police officer. *Id*. ¶ 4. Four months later, the county deputy sheriff saw a vehicle with the same personalized license plate being driven by a woman, and recognizing the license plate and remembering the earlier arrest, he made a traffic stop of the vehicle which it turned out, was being driven by the same woman who was arrested earlier for DWI. *Id*. ¶ 5. The *Halvorson* court concluded that the stop was supported by reasonable suspicion. *Id*. ¶ 16.

{17} Having been guided by the foregoing authorities, and having considered the basis for Deputy Benally's suspicion that Defendant was driving under a suspended or revoked driver's license, we conclude that Deputy Benally's suspicion was

constitutionally reasonable. Three or four months earlier, Deputy Benally stopped Defendant and learned that his driver's license was suspended with an arrest clause. Deputy Benally let Defendant go with a warning to fix his licensing issue. Shortly thereafter, in another personal encounter with Defendant, Deputy Benally learned that Defendant's driver license was still suspended. Within three to four weeks prior to the stop, Deputy Benally learned that Defendant was arrested for driving with a suspended or revoked license and DWI. There was no reason for Deputy Benally to believe that Defendant had fixed his license problem, and Defendant does not contend that the information forming the basis for his belief that Defendant was driving under a suspended or revoked driver's license was stale or otherwise unreliable. Moreover, we fail to see why Deputy Benally was required to call his dispatch to confirm his suspicion that Defendant's license was still suspended under the circumstances. "[R]easonable suspicion is a commonsense, nontechnical conception, which requires that officers articulate a reason, beyond a mere hunch, for their belief that an individual has committed a criminal act." *Funderburg*, 2008-NMSC-026, ¶ 15 (alteration, internal quotation marks, and citation omitted). Deputy Benally's reason for stopping Defendant satisfies this standard.

{**18**}     We hold that Deputy Benally's stop was supported by a constitutionally adequate reasonable suspicion that Defendant was driving under a suspended or

12

revoked driver's license. Accordingly, it is not necessary for us to address whether the seatbelt and failure to maintain lane violations were pretext for the stop. We reverse the district court on the motion to suppress and proceed to the second point raised on appeal.

**II.    Motion to Dismiss**

{19}    Commonly referred to as the "six-month rule," Rule 6-506(B) requires a trial in the magistrate court to commence within one hundred eighty-two days from seven separate triggering events, whichever occurs latest. Considering Defendant's arraignment on November 5, 2012 as the applicable triggering event, trial was required to commence one hundred eighty-two days later—on May 6, 2012. Rule 6-506(B)(1) (stating in pertinent part that trial shall commence within one hundred eighty-two days after the date of the arraignment). Trial was scheduled three days later, on May 9, 2012. Defendant's motion to dismiss asserted that because trial was not held by May 6, 2012, and an extension to commence trial was not properly granted by the magistrate judge, the case should have been dismissed with prejudice under Rule 6-506(E)(2). "In the event the trial of any person does not commence within the time limits provided in this rule, including any court-ordered extensions, the case shall be dismissed with prejudice." *Id*. Following a hearing, the district court denied Defendant's motion to dismiss.

## A.    Facts

{20}    A period of delay resulted from multiple judges being assigned to preside over the case. The case was first assigned to Judge Henrietta S. Soland, who arraigned Defendant on November 5, 2012. Judge Soland set a pretrial conference for November 20, 2012, which was then rescheduled to December 5, 2012. Judge Soland retired at the end of December 2012 when her term expired, and on January 10, 2013, Judge Timothy F. Hodo was assigned to preside over the case. Judge Hodo promptly set a hearing on Defendant's motion to suppress and set trial for January 30, 2013. However, Defendant excused Judge Hodo from the case on January 24, 2013, and on February 13, 2013, Judge Stanley R. King was assigned. He presided over the case until its conclusion.

{21}    On February 13, 2013, Judge King set the case for a hearing on Defendant's motion to dismiss and set trial to commence on March 5, 2013. However, Defendant did not appear for the March 5, 2013 hearing and trial. The stated reason for Defendant's non-appearance was that Defendant had rushed to Albuquerque, New Mexico to be with his niece, who had been placed on life support. No bench warrant for failure to appear was issued, apparently because Defendant had reported in advance to counsel and the court that he was going to be absent and why. Judge King reset the case for trial to commence on May 3, 2013, but Judge King "cancelled" this

14

setting, and the trial was again reset for May 9, 2013. On May 7, 2013, Defendant filed a motion to dismiss in the magistrate court, alleging a violation of Rule 6-506(B), and on May 8, 2013, the State responded by filing a motion for an extension of time to commence the trial under Rule 6-506(C). The next day, on May 9, 2013, the day set for trial, Judge King ordered that the State be granted a thirty-day extension of time to commence the trial. In addition, because Defendant failed to appear for the trial, Judge King issued a bench warrant for Defendant's arrest. Defendant surrendered on May 16, 2013, and Judge King approved the conditional plea agreement that same day.

**B.     Standard of Review**

{22}     We are called upon here to interpret a rule adopted by our Supreme Court and how it was applied by the district court. These are questions of law that are reviewed de novo on appeal. *State v. Dorais*, 2016-NMCA-049, ¶ 18, 370 P.3d 771 ("On appeal, we review the district court's analysis of the six[-]month rule de novo."); *see Sharp*, 2012-NMCA-042, ¶¶ 4-6 (addressing the construction of the magistrate court six-month rule and sanctions for its violation); *State v. Granado*, 2007-NMCA-058, ¶ 11, 141 N.M. 575, 158 P.3d 1018 (addressing the construction of the metropolitan court six-month rule); *State v. Dominguez*, 2007-NMCA-132, ¶¶ 7-8, 142 N.M. 631, 168 P.3d 761 (addressing the construction of the now repealed six-month rule for the

district court).

## C.    Analysis

### 1.    A Final, Appealable Order Is Before Us

{23}    The denial of a motion to dismiss ordinarily contemplates future proceedings in a case. Because we only decide appeals from final orders, we first address whether Defendant's appeal is properly before us. Defendant entered into a conditional guilty plea in the magistrate court. The condition was that if he succeeded on the motion to suppress or the motion to dismiss on appeal, he was entitled to withdraw his guilty plea. If Defendant is not successful in the appeal on both issues, nothing remains but to remand the case to the magistrate court for execution of the sentence.

{24}    In the de novo appeal to the district court, Defendant prevailed on his motion to suppress, but not the motion to dismiss. The State has now succeeded in its appeal in this Court from the district court order granting Defendant's motion to suppress. Defendant may therefore properly appeal from the order denying his motion to dismiss. Rule 12-201(C) NMRA ("An appellee may . . . raise issues for determination only if the appellate court should reverse, in whole or in part, the judgment or order appealed from."). Moreover, the district court order is a final, appealable order, because if this Court decides against Defendant on this issue, there is nothing left to do except remand the case for enforcement of the judgment and sentence imposed by

the magistrate court. *See Celusniak*, 2004-NMCA-070, ¶ 14 (recognizing that in a de novo appeal to the district court after the defendant enters a conditional guilty plea in the magistrate court following the denial of a motion to suppress, and the district court finds against the defendant, the district court order is a final appealable order because "there are no issues remaining in the defendant's adjudication").

**2.      There Was No Error in Denying Defendant's Motion to Dismiss**

{25}      Having determined that Defendant's appeal is properly before us, we now turn to the merits. The State's motion for an extension of time was filed on May 8, 2013, two days after the May 6, 2013 deadline. Rule 6-506(D) provides that a motion to extend the time to commence trial may be filed within the applicable time limit, "or upon exceptional circumstances shown within ten (10) days after the expiration of the time period." The parties' briefs dispute whether "exceptional circumstances" were shown that justified the late filing of the State's motion. Defendant argues that the State failed to demonstrate "exceptional circumstances" to allow for its late filing and that it was therefore error for Judge King to even consider the State's motion. The State responds that because Judge King had already orally ruled on May 3, 2013, before the six-month limit expired, and that the trial would be vacated and reset, Judge King properly considered its motion.

17

{26}   In addition, before an extension of the six-month time to commence trial can be granted, Rule 6-506(C)(5) requires a determination by the magistrate court "that exceptional circumstances exist that were beyond the control of the state or the court that prevented the case from being heard" within the six-month period. Related to this issue, because the magistrate court proceedings were not on the record, and Judge King did not testify in the hearing before the district court, the parties also dispute whether the district court could rely on the prosecutor's representations about what Judge King determined were the "exceptional circumstances" to "cancel" the May 3, 2013 trial setting.

{27}   We decline to address these competing arguments because Rule 6-506 itself answers whether the district court was correct in denying Defendant's motion to dismiss. The latest triggering event here is under Rule 6-506(B)(5), which provides that "if the defendant is arrested for failure to appear or surrenders in this state for failure to appear," trial must commence within one hundred eighty-two days after "the date of arrest or surrender of the defendant."

{28}   Defendant failed to appear for trial on March 5, 2013, but apparently because he was attending to his niece who was placed on life support and notified the court and counsel, Judge King did not issue an arrest warrant, nor was a warrant required. Rule 6-207(A) NMRA (providing that if any person has been ordered by the

18

magistrate judge to appear at a certain time and place, and fails to do so, "the court may issue a warrant for the person's arrest"); *see Granado*, 2007-NMCA-058, ¶ 23 (construing identical language in the metropolitan court rule counterpart to mean that a judge may, but is not required to, issue a bench warrant for a person who fails to appear as required, and that the judge has discretion whether to issue a bench warrant). Because no bench warrant was issued, Rule 6-506(B)(5) does not apply. *See Granado*, 2007-NMCA-058, ¶¶ 25-26 (concluding that although the metropolitan court judge stated that a bench warrant was going to be issued when the defendant failed to appear at trial, and because no bench warrant was actually issued, the automatic extension provided by the metropolitan court's counterpart rule did not apply).

{29} However, Judge King did issue a bench warrant when Defendant failed to appear for trial on May 9, 2013, and Defendant surrendered on May 16, 2013. Under the circumstances, we conclude that our holding in *Dorais* applies, and is dispositive. In *Dorais*, the six-month rule did not expire until December 28, 2006, and trial was set for November 9, 2006. 2016-NMCA-049, ¶ 15. Because the defendant arrived late for the trial on November 9, 2006, the magistrate judge had him arrested for failure to appear. *Id*. Trial was ultimately held on August 13, 2007, and the defendant was convicted. *Id*. ¶ 16. As in this case, the defendant in *Dorais* argued to the magistrate

19

court and in his de novo appeal to the district court that Rule 6-506 was violated. *Dorais*, 2016-NMCA-049, ¶¶ 16-17. We held: "[T]he mere fact of [the d]efendant's absence at the appointed place and time permitted the magistrate court to issue the bench warrant and order [the d]efendant arrested. Because the triggering event specified in the six[-]month rule—arrest for failure to appear—is also unqualified in any way, once [the d]efendant was arrested, the six-month clock began anew." *Id*.

¶ 18. When a bench warrant is issued, Rule 6-506(B)(5) is self-executing, and under its terms, an additional six-month period to commence trial begins upon arrest or surrender. Therefore, the State was not required to file a motion for extension of time to commence the trial. Moreover, the fact that the arrest warrant here was issued after the initial six-month period elapsed is of no consequence, because the rule does not contain such a qualification. Under the terms of the rule, if a defendant fails to appear, causing a bench warrant to be issued for his arrest, that defendant forfeits the right to be brought to trial within the initial six-month period. Following *Dorais*, we hold that an additional six-month period to bring Defendant to trial commenced on May 16, 2013, when Defendant surrendered on the warrant. There was no violation of Rule 6-506.

**III.  CONCLUSION**

{30}    The order of the district court granting Defendant's motion to suppress is reversed, the order of the district court denying Defendant's motion to dismiss is affirmed, and this case is remanded to the district court for further proceedings consistent with this opinion.

{31}    **IT IS SO ORDERED.**


_____

**MICHAEL E. VIGIL, Judge**


**WE CONCUR:**


_____

**LINDA M. VANZI, Chief Judge**


_____

**JAMES J. WECHSLER, Judge**


21