This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                      **No. 34,648**

**AMANDA COLE,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean, Jr., District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

McGarry Law Office
Kathleen McGarry
Glorieta, NM

for Appellant

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Amanda Cole (Defendant) was charged with trafficking a controlled substance, methamphetamine, and possession of drug paraphernalia. Defendant filed a motion to suppress evidence retrieved from her flip cell phone that was discovered during a search of the vehicle in which she was a passenger. Defendant claimed that the officers did not possess a valid warrant, and therefore seizure of the cell phone violated her Fourth Amendment rights under the U.S. Constitution, as well as the protections of Article II, § 10 of the New Mexico Constitution. The motion to suppress was denied. Defendant entered a conditional guilty plea for trafficking, but reserved the right to appeal the denial of the suppression motion. We affirm the district court's denial of Defendant's motion.

I.     BACKGROUND

{2}     Defendant was a passenger in the back seat of a vehicle owned and driven by Kenneth Burrows (Burrows), who was under investigation by law enforcement for trafficking methamphetamine and cocaine. During the investigation, officers worked with a confidential informant (CI) to conduct controlled purchases of drugs. As a result of the initial investigation, a search warrant was obtained to stop and search Burrows's vehicle. When the vehicle was stopped, there were three individuals inside, including Burrows, who was sitting in the driver's seat, his girlfriend who was in the passenger seat, and Defendant who was in the back seat on the passenger side. The

officers discovered that Defendant was the subject of an out-of-state arrest warrant. All three occupants and the vehicle were taken to the police station.

{3} When the vehicle was searched, pursuant to the search warrant, officers found multiple cell phones, drugs, drug paraphernalia, guns, and money. The cell phones, made up of both flip phones and smart phones, were discovered on the floorboard of the front passenger seat. Agent Jacob Sanchez, a deputy with the San Juan County Sheriff's Office assigned to the Region II Narcotics Task Force, opened the phones in order to find out who owned them. Agent Sanchez discovered that one of the flip cell phones belonged to Defendant. When Agent Sanchez opened Defendant's flip cell phone, he observed text messages concerning drug trafficking. He then closed the cell phone and put it with the other items seized as a result of the stop. Agent Sanchez stated that a second search warrant was sought for the cell phones because it is the procedure followed when cell phones are seized.

{4} Defendant filed a motion to suppress evidence taken from her flip cell phone. Defendant argued that the officers' actions in opening her flip cell phone and using information obtained from the cell phone to seek a second warrant to search her flip cell phone amounted to an illegal search. Defendant claimed that the first warrant did not apply to her or her property, and the second warrant was based on illegally-seized evidence. In denying Defendant's motion, the district court found that Defendant did

not challenge the legality of the search warrant or the traffic stop related to Burrows and his vehicle. The district court also found that multiple "unknown cell phones" were located on the floorboard of the front passenger seat, and that law enforcement officers did not remove the cell phones from the occupants' person, nor did they order them to leave their phones in the vehicle. The district court further found that Agent Sanchez opened "what turned out to be Defendant's flip cell phone in order to determine who it belonged to"; a message "on what turned out to be Defendant's flip cell phone was immediately visible on the screen when opened; it contained information associated with drug trafficking"; and Agent Sanchez "immediately closed what turned out to be Defendant's [flip] cell phone" and sought a search warrant for the cell phone.

## II.    DISCUSSION

## A.    Abandonment

{5}    The district court denied Defendant's suppression motion, concluding that Defendant did not have a legitimate expectation of privacy in her flip cell phone because "she exited the vehicle and left her [flip] phone in the vehicle without taking any steps to protect or safeguard its contents." In other words, the district court determined that Defendant abandoned her flip cell phone. We review de novo the district court's conclusion of law. *See State v. Celusniak*, 2004-NMCA-070, ¶ 27, 135

4

N.M. 728, 93 P.3d 10. On appeal, this Court may independently draw its own conclusions of law. *See Bounds v. State ex rel. D'Antonio*, 2011-NMCA-011, ¶ 33, 149 N.M. 484, 252 P.3d 708.

**{6}** Abandonment is based on actions and intent, and the intent to abandon must be shown by clear and unequivocal evidence. *See Celusniak*, 2004-NMCA-070*,* ¶ 26. The basic question is whether Defendant disclaimed ownership of the cell phone or physically relinquished it. *See id.* ¶ 28. Here, there is nothing to indicate that Defendant denied ownership of the cell phone or was even asked if the cell phone belonged to her. *See id.* ¶ 34 (pointing out that an officer can easily verify ownership of an item by asking, and an officer should make such an inquiry before assuming that the item is abandoned). There is no evidence in the record to show that Defendant left the cell phone in the vehicle with the intent to abandon it. As a result, we hold that the district court erred in concluding that Defendant abandoned the cell phone. *See id.* ¶¶ 32-33 (holding that abandonment was not supported where the defendant did not toss the purse out the window, did not leave it in a public place, was not fleeing when she left the purse, and did not put the purse in a place where the defendant had no plans of returning).

**{7}** However, this Court can uphold the district court's denial of the motion to suppress if it is right for any reason. *See State v. Gallegos*, 2007-NMSC-007, ¶ 26,

141 N.M. 185, 152 P.3d 828 (stating that an appellate court will affirm a district court's decision if it is right for any reason, so long as it is not unfair to the appellant); *State v. Wilson*, 1998-NMCA-084, ¶ 17, 125 N.M. 390, 962 P.2d 636 (stating that fairness "tempers" the precept of affirming a decision of the district court as right for any reason). Based on our review of the first affidavit for a search warrant, we conclude that there already existed probable cause to search all cell phones found in the vehicle.

**B.      There Was Probable Cause to Search Defendant's Flip Cell Phone**

{8}      Defendant claims that the first search warrant did not cover her flip cell phone because she was not specifically named in the affidavit or warrant. The district court concluded that the search warrant did not specify Defendant's flip cell phone and did not contain probable cause to justify the search of her cell phone. We disagree.

{9}      On review of the issuing court's determination of probable cause when issuing a warrant, "the reviewing court must determine whether the affidavit as a whole, and the reasonable inferences that may be drawn therefrom, provide a substantial basis for determining that there is probable cause to believe that a search will uncover evidence of wrongdoing." *State v. Williamson*, 2009-NMSC-039, ¶ 29, 146 N.M. 488, 212 P.3d 376 (overruling in part all previous case law to the extent that the cases applied a de novo rather than substantial basis standard of review). On review, we consider the

information within the four corners of the affidavit submitted in support of a search warrant. *See id.* ¶ 31. "[A]n issuing court's determination of probable cause must be upheld if the affidavit provides a substantial basis to support a finding of probable cause." *Id.* ¶ 29. There is probable cause when there is a reasonable basis to believe an offense has been or is being committed in the place that is the subject of the search warrant. *Id.* "[T]he substantial basis standard of review is more deferential than the de novo review applied to questions of law, but less deferential than the substantial evidence standard applied to questions of fact." *Id.* ¶ 30. Thus, "if the factual basis for the warrant is sufficiently detailed in the search warrant affidavit and the issuing court has found probable cause, the reviewing courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *Id.* (alteration, internal quotation marks, and citation omitted). Here, the district court that issued the first search warrant found, based on the affidavit, that there was probable cause to search the person, place, and property described in the affidavit, and we give deference to the issuing court's determination.

**1.      First Affidavit for Search Warrant and Corresponding Search Warrant**

{10}     Agent Sanchez prepared the affidavit for the first search warrant of the vehicle owned and driven by Burrows, a silver Dodge Challenger. The search warrant was executed on May 16, 2014, by a district court judge and authorized a nighttime search.

7

The affidavit described Burrows, the vehicle that he would be driving into New Mexico from California, though the timing was unknown, and stated that the items believed to be concealed in the vehicle included methamphetamine and narcotics, paraphernalia, money, and items related to the sale of narcotics and methamphetamine. The affidavit included requests to detain and search "any occupants of the vehicle . . . proven to have a nexus with [the] person in control at the time." A detailed explanation of the use of cell phones in operations involving drug distribution was included, as well as an explanation for why the information contained in cell phones often indicates "who are suppliers or users of illegal drugs." Through training and experience, Agent Sanchez learned that drug distributors often use more than one cell phone in their transactions. The affidavit further explained the lengthy process involved in searching cell phones, computers, and other electronic storage devices. Agent Sanchez requested "authority to search for cellular telephones and to search for such information pertaining to the distribution of controlled substances."

{11}    In addition to the detailed information described above, the affidavit also contained a section based on the particular investigation in this case. *See State v. Hinahara*, 2007-NMCA-116, ¶ 21, 142 N.M. 475, 166 P.3d 1129 (stating that a search warrant was sufficiently particular when all items sought under the warrant were potentially connected to the crimes being investigated as described in the affidavit).

The search warrant affidavit included a very detailed description of surveillance of Burrows and controlled purchases between the CI and Burrows during which audio recordings, photographs, text messages, and information regarding contacts via cell phones were collected. The information gathered by the CI and included in the affidavit indicated that Burrows and his girlfriend planned to travel to California to get a "big load" of dope that would be the best the CI ever had. The officers planned to "conduct a traffic stop as [the vehicle] enter[ed] into San Juan County." It was around 10:00 p.m. when the officers identified and stopped the vehicle on its return from California. The occupants inside the vehicle were Burrows, his girlfriend, and Defendant. The vehicle was secured and taken to the Farmington Police Department to execute the search warrant.

{12}     The place to be searched in this case was a silver Dodge Challenger vehicle, described in detail in the affidavit for search warrant. The search warrant applied to the entire vehicle and the contents as described in the affidavit. There was reason to believe that "methamphetamine/narcotics, paraphernalia, money and contraband, as well as evidence relating to the sale of methamphetamine and/or other illegal narcotics" were located in the vehicle. The warrant was not limited to a particular person or a particular person's property. Instead, the warrant included any and all cell phones found in the vehicle. The affiant described the cell phones they believed would

9

be inside the vehicle as containing information "such as contact names, telephone numbers, and text messages" related to drug trafficking. The affidavit specifically requested authority "to search for cellular telephones and to search for such information pertaining to the distribution of controlled substances." Within the investigation portion of the affidavit, it was stated that the CI had exchanged text messages with Burrows while he was en route to New Mexico. The CI had cell phone numbers for both Burrows and Burrows's girlfriend.

{13}     All the cell phones discovered during the search were located on the floorboard of the front passenger side of the vehicle. Based on the district court's findings, there was no indication that the officers knew who owned the cell phones found in the vehicle, or why all of the cell phones were found on the floorboard of the front passenger seat. Burrows's girlfriend, who had been sitting in the front passenger seat, told the officers that whatever was found in the vehicle belonged to her. No other occupant of the vehicle claimed ownership of any of the items found inside, and the cell phones were not taken from the possession of any of the occupants. *Cf. State v. Light*, 2013-NMCA-075, ¶¶ 43-45, 306 P.3d 534 (explaining that in situations involving automobile searches, drivers and passengers possess a reduced expectation of privacy in property they transport in vehicles, as opposed to the search of a building

in which the personal property of a person not subject to the search warrant has been stored on premises that are open to the public).

{14}    Defendant claims that she opposed the validity of the affidavit because the language used in the affidavit was boilerplate language, though she never specified what part of the affidavit she considered boilerplate language. As discussed above, the search warrant included some broad statements, but also included specific and detailed statements regarding surveillance during the investigation and the communications between the subjects of the surveillance. This specific information sufficiently tied the cell phones to the drug trafficking operation that was the subject of the investigation.

{15}    The statements in the affidavit for the first search warrant, along with reasonable inferences derived from those statements, provide a substantial basis to support a determination of probable cause to support the search of the entire vehicle for the type of evidence described in the affidavit, including "cellular telephones and . . . information pertaining to the distribution of controlled substances." Thus, the first search warrant provided the officer with the authority to open the cell phones and look for information connected to the trafficking investigation. Agent Sanchez opened the cell phones only to determine who owned them and when doing so, he observed information on the flip cell phone screen that appeared to be connected to the drug trafficking investigation. The officer acted under the authority of the first search

11

warrant when he opened the cell phones. For that reason, the district court's decision to deny Defendant's suppression motion was correct.

{16}     Defendant further argues that the State admitted at the motion to suppress hearing that there was no probable cause in the first affidavit to justify a search of Defendant's flip cell phone. However, this Court is not bound by any concessions the State may have made at the district court, and as noted, we have conducted our own analysis. *See State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775 ("This Court . . . is not bound by the [s]tate's concession and we conduct our own analysis[.]").

{17}     In passing, Defendant suggested in her motion to suppress and now on appeal that the seizure of her flip cell phone violated "the greater protections of Article II, § 10 of the New Mexico Constitution." Beyond that statement Defendant never develops a supporting argument nor does she provide any legal authority to support this statement. "[T]his Court's policy is to refrain from reviewing unclear or undeveloped arguments [that] require us to guess at what [a party's] arguments might be"; thus, we decline to review this undeveloped argument any further. *State v. Urioste*, 2011-NMCA-121, ¶ 29, 267 P.3d 820 (internal quotation marks and citation omitted).

**2.      Second Affidavit for Search Warrant and Corresponding Search Warrant**

{18} We note that after the officer opened the cell phones in order to determine who owned them, a second search warrant was obtained to search the cell phones. While the first search warrant provided authority to open the cell phones to search for evidence of drug trafficking, the second search warrant, although not technically necessary, provided additional authority to conduct a search for such information pertaining to the distribution of controlled substances.

## III. CONCLUSION

{19} We hold that Defendant did not abandon the flip cell phone, and that Agent Sanchez was properly acting under authority of the first search warrant when he opened the flip cell phone to determine ownership. We affirm the district court's denial of Defendant's motion to suppress the evidence taken from the flip cell phone.

{20} **IT IS SO ORDERED.**

---

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

---

**JAMES J. WECHSLER, Judge**

---

**J. MILES HANISEE, Judge**