894 P.2d 1018

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Michael GUEBARA, Defendant–Appellant.**

**No. 15219.**

Court of Appeals of New Mexico.

March 7, 1995.

Certiorari Granted April 27, 1995.

*denied,* 109 N.M. 704, 789 P.2d 1271 (1990).

Tom Udall, Atty. Gen., Katherine Zinn, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Sue A. Herrmann, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## *OPINION*

APODACA, Chief Judge.

Michael Guebara (Defendant) appeals the trial court's denial of his motion to suppress

the Vehicle Identification Number (VIN) seized from a motor vehicle. We must decide whether, in order to observe a VIN generally and otherwise observable from outside an automobile, a police officer may reach into the passenger compartment of an unoccupied, parked and locked vehicle to move papers obscuring the VIN, without probable cause. We answer this question negatively. We hold that, in the circumstances of this case, Defendant's Fourth Amendment rights were violated when police searched his vehicle without probable cause. We thus reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In January 1992, a blue 1992 Chevrolet pickup truck (the vehicle) was stolen from Casa Chevrolet in Albuquerque, New Mexico. In late April or early May 1992, Robert Hudson asked Deborah Cook to store the vehicle on her property in Artesia, New Mexico. Hudson explained that a friend of his was going through a divorce and that his friend's spouse might "tear up" the vehicle. Cook then gave Hudson her permission to park the vehicle at her home.

Approximately one week later, when Cook returned home, the vehicle was parked in her yard. Cook did not know who brought the vehicle to her yard, and no one came to check on it for about three weeks. The vehicle was parked behind the house and was not visible from the street.

Nearly three weeks later, Cook asked a mutual friend, Donny Self, to tell Hudson to remove the vehicle from her property. Before Hudson could comply with this request, however, Cook's husband contacted the Artesia Police Department to express his concern about the vehicle left on his property and indicated that he thought it might be stolen.

Police Officers Jerry Privetts and Raymond Gates responded to the call. They observed that the vehicle had no license plates but had a temporary registration sticker in the back window made out to Dynamite Motors in Roswell, New Mexico. The officers attempted to check the VIN located on the dashboard, but it was covered with an envelope. The officers contacted the person whose name appeared on the envelope, but he knew nothing about the vehicle. The officers unsuccessfully attempted to contact Dynamite Motors about the vehicle. The Sheriff of Chaves County informed the officers that Dynamite Motors was not a registered car dealer in Chaves County. The officers unsuccessfully tried to open the vehicle with a "slim-jim" because the keys were unavailable. Because of bad weather, the officers decided to return at another time.

The officers returned the following day and inserted a coat hanger through the window to move the envelope covering the VIN to expose it. The officers read the VIN from outside the vehicle, through the front windshield. Because a check of the VIN revealed that the vehicle had been stolen from Casa Chevrolet, the officers seized the vehicle. No further search of the vehicle's interior was conducted. The police later arrested Defendant and charged him with one count of receiving or transferring a stolen motor vehicle in violation of NMSA 1978, Section 66-3-505 (Repl.Pamp.1994), and one count of conspiracy to receive or transfer a stolen motor vehicle in violation of NMSA 1978, Section 30-28-2 (Repl.Pamp.1994).

Defendant filed two separate motions, one to suppress the VIN seized from the vehicle, the other to dismiss the case against him on other grounds. Following the suppression hearing, the trial court denied Defendant's motion to suppress, summarily holding that the search was legal under the facts, without offering any other basis for its decision. The trial court then immediately conducted a hearing to address Defendant's motion to dismiss. At the conclusion of this second hearing, Defendant requested additional rationale from the trial court for its denial of the motion to suppress. The trial court elaborated on its earlier ruling on the suppression issue, stating:

> We have a vehicle that's parked at a private residence in Artesia for about three weeks by some guy named Hudson or some guy named Self. The property owner called the sheriff's department and said, "Come out here and check out this vehicle—I think it's stolen." They get out there and they find the VIN number is

covered up and they try to locate whoever might own the car and in order to check on whether it's stolen or not, because it's been abandoned at this private residence. I'm going to find that it was—it was originally placed there with this guy's wife's permission, but he called the cops and said, "This thing has been here for three weeks and I'm afraid it's stolen." I think the police actions of putting a coat hanger through the window to move the envelope which covered the VIN number out of the way so that they could find out if it was stolen were very reasonable under the circumstances of this case and were not unlawful.

The trial court also determined that the officers had time to get a warrant but that a warrant was not necessary.

Defendant plead no contest to one count of receiving or transferring a stolen motor vehicle, reserving the right to appeal the denial of the motion to suppress.[1]

## II. DISCUSSION

### A. Standing

Initially, the State argues that Defendant did not have standing to object to the search of the vehicle because he did not show any lawful personal or possessory interest in the vehicle and was not present when police actually searched the vehicle. The State, however, failed to raise this issue in the trial court. In light of this Court's decision in *State v. Porras–Fuerte*, 119 N.M. 180, 889 P.2d 215, (Ct.App.), *cert. granted*, 119 N.M. 21, 888 P.2d 467 (1994), we decline to decide the issue of Defendant's standing because "standing may not be raised for the first time on appeal." This ruling "does not, however, preclude the State from raising [the issue of standing] upon remand." *Id.*

### B. Abandonment

▮ Defendant argues that the trial court erred in determining that Defendant abandoned the vehicle and, in so doing, relinquished his Fourth Amendment reasonable expectation of privacy. *See State v. Esguer-*

ra, 113 N.M. 310, 314, 825 P.2d 243, 247 (Ct.App.1991); *State v. Clark*, 105 N.M. 10, 12–13, 727 P.2d 949, 951–52 (Ct.App.), *cert. denied*, 104 N.M. 702, 726 P.2d 856 (1986). One who has no reasonable expectation of privacy lacks standing to complain of an illegal search. *Esguerra*, 113 N.M. at 314, 825 P.2d at 247.

In a Fourth Amendment context,

[t]he issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search.

*United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973) (citing *United States v. Edwards*, 441 F.2d 749, 753 (5th Cir.1971)). Abandonment, in this sense, is primarily a matter of acts and intent. *Clark*, 105 N.M. at 13, 727 P.2d at 952; *Colbert*, 474 F.2d at 176. Intent "may be inferred from words spoken, acts done, and other objective facts." *Colbert*, 474 F.2d at 176. "The intent to abandon will not be presumed and must be affirmatively shown by the party relying on abandonment. The showing must be by clear, unequivocal and decisive evidence." *Clark*, 105 N.M. at 13, 727 P.2d at 952.

▮ The trial court's conclusion that Defendant abandoned the vehicle, and thus relinquished his legitimate expectation of privacy, is not supported by the record. First, the time lapse was not accompanied by any acts indicating an intent to abandon the vehicle. Second, the vehicle was parked on private property with the consent of the property owners. Whether the withdrawal of that consent was ever communicated to Defendant was never shown. Also, the Cooks did not have the keys to the vehicle. The only evidence presented that might indicate abandonment was the length of time the vehicle was parked at the Cooks' residence. That fact, standing alone, however, is insufficient to establish by "clear, unequivocal and decisive evidence" that the vehicle was aban-

---

1. The New Mexico Supreme Court approved the use of conditional plea agreements in *State v.*

*Hodge*, 118 N.M. 410, 882 P.2d 1 (1994).

doned. We hold that, in the circumstances of this case, the parking of a locked vehicle on private property for several weeks, with the consent of the property owners, did not signify that the vehicle was abandoned.

### C. Expectation of Privacy in a VIN

The State relies primarily on *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986), for the proposition that Defendant had no reasonable expectation of privacy in the VIN. In that case, a motorist was stopped for a traffic violation. *Id.* at 108, 106 S.Ct. at 962–63. He stepped out of the car and approached one of the officers. *Id.* The other officer opened the car door to look for the VIN, which was located on the left door jamb in pre–1969 automobiles. *Id.* When the officer did not find the VIN on the door jamb, he reached into the car's interior to move some papers obscuring the area of the dashboard where the VIN was located on later-model automobiles. *Id.* In so doing, the officer saw the handle of a gun protruding from underneath the driver's seat and seized the gun. *Id.* The defendant was then arrested.

In *Class,* the Supreme Court held that the officer's actions constituted a search but that "this search was sufficiently unintrusive to be constitutionally permissible in light of the lack of a reasonable expectation of privacy in the VIN and the fact that the officers observed respondent commit two traffic violations." *Id.* at 119, 106 S.Ct. at 968. In reaching that conclusion, the Court noted "[h]ere, where the object at issue is an identification number behind the transparent windshield of an automobile driven upon the public roads, we believe that the placement of the obscuring papers was insufficient to create a privacy interest in the VIN." *Id.* at 114, 106 S.Ct. at 966. The Court went on to hold that "[t]he mere viewing of the formally obscured VIN was not, therefore, a violation of the Fourth Amendment." *Id.*

At first glance, *Class* appears to easily resolve the issue involved in this appeal in favor of affirming the trial court's denial of Defendant's motion to suppress. On closer examination, however, we conclude that *Class* does not compel such a decision. We reach this conclusion for several reasons.

#### 1. Scope of *Class*

First, *Class* does not clearly articulate when one has a reasonable expectation of privacy in a VIN located inside an automobile because the focus of the alleged unconstitutional search in *Class* was on a gun. This same conclusion was reached by the Utah Supreme Court:

> Because the focus of the alleged ... search in *Class* was the gun rather than the VIN itself, the Court, while holding that there is no reasonable expectation of privacy in a VIN, did not clearly articulate when one has a reasonable expectation of privacy in a VIN located inside one's automobile.

*State v. Larocco,* 794 P.2d 460, 464 (Utah 1990). Thus, a Fourth Amendment analysis is necessary.

#### 2. *Class* Distinguished

Second, *Class* is distinguishable from this case. In *United States v. $277,000 U.S. Currency,* 941 F.2d 898, 902 (9th Cir.1991), the court was presented with a case factually similar to this appeal. That case involved two trucks parked by the owner in the backyard of another person. *Id.* at 899. When police responded to a complaint of loud music on the premises, they noticed two vehicles covered with opaque car covers bearing Mexican license plates parked in the backyard. *Id.* One officer, aware that American vehicles were often stolen and sold in Mexico with Mexican license plates, removed the car covers on each vehicle to determine by crosschecking the VIN if the vehicles had been reported stolen. *Id.* When the officer could not find the VIN plates, he opened the locked trucks and he conducted a search of the interior of the defendant's vehicles, finding a large amount of cash. *Id.* at 899–900.

*$277,000 U.S. Currency* held that, although the owner of the vehicles in question had no legitimate expectancy of privacy in the residence or backyard, he did have a reasonable expectation of privacy inside the trucks. *Id.* at 900–01. Consequently, the police needed probable cause to search the vehicles. The

court held that the police did not have probable cause to search the vehicles. The vehicles were parked in a backyard and had not been involved in any traffic violation. *Id.* at 901. Additionally, the police only had generalized information that some vehicles with Mexican license plates had been involved in illegal activities.

In reaching this conclusion, the Ninth Circuit distinguished *Class:*

> In the case at hand, the vehicles were not being driven on the roads; they were parked in a backyard. The occasion for the inspection was not brought about by traffic violations; it was merely the discovery of two vehicles with Mexican license plates parked in a backyard. The factors carefully balanced in the *Class* opinion, such as the necessity of vehicle regulation on the public highways, officer safety and the minimal intrusion involved by removing a paper from the dashboard of a vehicle already stopped for traffic violations, are simply inapplicable here. Surely the careful balancing revealed in the *Class* opinion is not to be extended so as to permit a search of any parked vehicle without probable cause just because the VIN is obscured in some way.

*Id.* at 902. The court then set out the policy rationale for its decision:

> To create a precedent whereby the police may uncover or enter a car at any time to inspect the VIN would permit the police to rove the streets, to remove car covers, or break into any automobile where the VIN number is obscured in some way. In this case, the removal of the car cover without probable cause was an unlawful search. Such a precedent would be equally applicable to a car that was not covered but where the location of the VIN was obscured in some other way. Thus, if a car owner happens to have a sun deflector on the windshield or a paper covering the VIN in his or her parked car, police would be authorized, without any probable cause, to break into the car merely to determine whether the VIN has been "removed, defaced, altered or destroyed." The language of the *Class* opinion does not lend itself to such an intrusive extension.

*Id.* (footnote omitted). Thus, the Ninth Circuit refused to extend *Class* to defeat the privacy interest in an unoccupied, parked vehicle. We find this reasoning persuasive.

■ *$277,000 U.S. Currency* is factually similar to the present case and distinguishable from *Class.* In both this case and *$277,000 U.S. Currency,* the vehicles were parked on private property with the consent of the property owner. Unlike *Class,* the vehicles were not inspected as a result of a traffic stop. Additionally, the factors carefully balanced by the Court in *Class,* such as the necessity of vehicle regulation on the public highways, officer safety, and the minimal intrusion involved by removing a paper from the dashboard of a vehicle already stopped for traffic violations, are inapplicable to both this case and *$277,000 U.S. Currency.* Following the Ninth Circuit's holding in *$277,000 U.S. Currency,* we hold that the search of the vehicle in this appeal violated Defendant's Fourth Amendment constitutional guarantees against unreasonable searches and seizures.

### 3. New Mexico VIN Statute

Finally, New Mexico law provides a procedure for law enforcement officials to follow when a vehicle's VIN is "removed, defaced, covered, altered or destroyed," in violation of NMSA 1978, Section 66–3–508 (Repl. Pamp.1994). In such a case, "the vehicle may be impounded for a period of time not to exceed six days." NMSA 1978, § 66–3–507(B) (Repl.Pamp.1994).

> At the expiration of the stated period, the vehicle or motor vehicle shall be returned to the person from whom it was taken at no cost unless an ex parte order allowing continued impoundment is issued by a magistrate or district court judge *after finding that probable cause exists* to believe that the manufacturer's serial number, engine number or other distinguishing number or mark or identification mark or number placed thereon under assignment of the division has been removed, defaced, covered, altered or destroyed.

*Id.* (emphasis added). Thus, probable cause is a prerequisite for police to impound a vehicle for more than six days.

■ Here, because the VIN was covered, the police officers should have acted under the authority of Sections 66–3–507 and –508 and impounded the vehicle. Having failed to do so, the officers had no right to enter the vehicle, however slight this entry may have been.

### D. Application of the Fourth Amendment

■ Under the Fourth Amendment, a search of private property without proper consent is unreasonable, except in certain carefully delineated situations, unless the police officer has prior authorization in the form of a valid search warrant. *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978). Because of an automobile's mobility, the complex scheme of regulations governing motor vehicles, and the lesser expectations of privacy the public holds with regard to private cars, an officer may search an automobile without a warrant, but the requirement of probable cause remains inviolate. *California v. Carney,* 471 U.S. 386, 394–95, 105 S.Ct. 2066, 2070–71, 85 L.Ed.2d 406 (1985); *United States v. Ross,* 456 U.S. 798, 809, 102 S.Ct. 2157, 2164, 72 L.Ed.2d 572 (1982); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).[2] As the Court emphasized in *Almeida–Sanchez v. United States,* 413 U.S. 266, 269, 93 S.Ct. 2535, 2537–38, 37 L.Ed.2d 596 (1973), the "automobile exception" to the warrant requirement, established in *Carroll,* did not "declare a field day for the police in searching automobiles. Automobile or no automobile, there must be probable cause for the search." *Accord State v. Bidegain,* 88 N.M. 384, 385, 540 P.2d 864, 865 (Ct.App.), *rev'd in part,* 88 N.M. 466, 541 P.2d 971 (1975). Under the facts of this appeal, the police lacked probable cause to believe that

the vehicle was stolen or that it contained contraband, and therefore lacked probable cause to search the vehicle. Thus, the search abrogated Defendant's constitutional right to be free from unreasonable searches and seizures.

Because we conclude that probable cause did not exist, we do not reach the question of whether a search warrant would be required if there were probable cause or whether the automobile exception would permit the search without a warrant.

### III. CONCLUSION

We conclude that the police lacked probable cause to believe that the subject vehicle was stolen or that it contained contraband. Consequently, the officers' actions of inserting a wire into the vehicle and disturbing papers on the dashboard, in a search for the VIN, violated Defendant's right to be free from unreasonable searches and seizures. We therefore hold that the trial court erred in not suppressing the VIN as a result of an unlawful search and reverse.

**IT IS SO ORDERED.**

FLORES, J., concur.

BLACK, J., dissenting.

BLACK, Judge (dissenting).

Although I agree with the majority that the facts of this case could support an order to suppress, I believe there is substantial evidence to support the trial court's decision denying the motion. I must therefore respectfully dissent.

On appeal from the denial of a motion to suppress, we are to view the evidence in the manner most favorable to the state, indulge all reasonable inferences in support of the trial court's decision, and disregard all inferences and evidence to the contrary. *State v. Blakely,* 115 N.M. 466, 468, 853 P.2d 168, 170

---

**2.** The few narrow, carefully drawn exceptions to the rule barring the police from searching a vehicle except upon probable cause, none of which are relevant to the instant case, include the right of the police, as a protective measure and in accordance with standard procedures, to conduct an inventory search of a vehicle im-

pounded after the motorist is arrested, *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and, upon making a lawful custodial arrest of a motorist, to search the person's vehicle, *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

(Ct.App.), *cert. denied,* 115 N.M. 535, 854 P.2d 362 (1993). If there is substantial evidence under this approach, the Court of Appeals will not disturb the trial court's denial of a motion to suppress. *State v. Roybal,* 115 N.M. 27, 29, 846 P.2d 333, 335 (Ct.App.), *cert. denied,* 114 N.M. 550, 844 P.2d 130 (1992).

The Artesia police (the police) received a telephone call from a local resident, Wayne Cook, who reported that a pickup truck had been abandoned at his house. Cook told the police he wanted the vehicle removed because he was "in fear" that it was stolen. Cook testified that, before the truck was delivered to his house, he had been told it would be left for a "few days." The truck had been at his residence for almost a month when he called the police. (In the meantime, Cook's wife had sent word to the person who had originally been given permission to store the truck that it should be removed.)

When the police arrived at the Cook residence, they found a new 1992 GMC pickup truck without a license plate. The Vehicle Identification Number (VIN) on the dashboard was covered by an envelope. The police officers left and attempted to contact the addressee of that envelope. The addressee said he knew nothing about the vehicle, but that the envelope should be in the possession of Defendant, Mike Guebara. The police attempted to locate Defendant but were unable to do so.

Because there was a temporary dealer's permit on the truck, the police attempted to contact the named dealer, Dynamite Motors of Roswell. The Chaves County Sheriff's Office, however, informed them that Dynamite Motors was not a registered dealer in that county. The police also attempted to locate the person who had originally left the vehicle at Cook's house, but were again unsuccessful.

Based on these facts, the trial court made a factual determination that the pickup truck had been abandoned. Other appellate courts have sustained findings of abandonment on much less compelling evidence. *See United States v. Gulledge,* 469 F.2d 713, 715 (5th Cir.1972) (men who asked to leave rented trailer at service station for "two or three days" had abandoned it after eleven days);

*United States v. Gibson,* 421 F.2d 662, 663 (5th Cir.) (per curiam) (car left at auto dealership for six days was abandoned), *cert. denied,* 400 U.S. 837, 27 L.Ed.2d 71 (1970); *Hawley v. Commonwealth,* 206 Va. 479, 144 S.E.2d 314, 317 (1965) (owner who had requested motel operator's permission to leave vehicle at motel for "three or four days" had abandoned vehicle by eighth day), *cert. denied,* 383 U.S. 910, 86 S.Ct. 894, 15 L.Ed.2d 665 (1966). In considering the reasonableness of a search, the issue is not whether the ownership of the property is abandoned, but rather whether circumstances indicate that the property owner has forfeited any legitimate expectation of privacy. *City of St. Paul v. Vaughn,* 237 N.W.2d 365, 370–71 (Minn. 1975); *see United States v. Barlow,* 17 F.3d 85, 88 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 148, 130 L.Ed.2d 88 (1994).

A police officer who encounters an abandoned vehicle has a right, if not the duty, to investigate the ownership of the vehicle. *See Barlow,* 17 F.3d at 88; *Muegel v. State,* 257 Ind. 146, 272 N.E.2d 617, 620 (1971). In this case it was more than such a chance discovery. The police did not encounter this pickup on a street or in a vacant lot. Rather, they were expressly summoned by Cook to investigate the ownership of a truck left on his property long past the period of his permission. Cook told the police he was "in fear" that the truck was stolen. Cook had a right to have the vehicle inspected and removed. I believe that his request to the police was a valid consent for a VIN search. *Commonwealth v. Grabowski,* 306 Pa.Super. 483, 452 A.2d 827, 832–33 (1982) (when defendant delivered car to proprietor of gas station with instructions to find buyer, proprietor had authority to consent to inspection of VIN under vehicle); *see also Fears v. State,* 152 Ga.App. 817, 264 S.E.2d 284, 285 (1979) (defendant's sister had a right to call police and consent to a search after finding gun in bag defendant left at her house).

The majority argues that NMSA 1978, Section 66–3–508 (Repl.Pamp.1994), requires the police to impound a vehicle before searching it. Under well-recognized law, had the police impounded the vehicle, probable cause would not have been required to con-

**670**

duct a search and inventory. *See Colorado v. Bertine,* 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). Furthermore, our impoundment statute, NMSA 1978, Section 66–3–507(B) (Repl.Pamp.1994), does not require probable cause to conduct an inventory, only to retain the vehicle for more than six days. Even if uncovering the VIN constituted a search within the meaning of the Fourth Amendment, *see New York v. Class,* 475 U.S. 106, 118–19, 106 S.Ct. 960, 968–69, 89 L.Ed.2d 81 (1986); *Muegel,* 272 N.E.2d at 620, it is difficult to understand how Defendant was prejudiced by the far less intrusive step of sliding the envelope down the dashboard with a hanger.

I would affirm the finding of the trial court that the police acted reasonably in uncovering the VIN and attempting to ascertain the proper registration of the vehicle. I must therefore respectfully dissent.